**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 07-10158-DPW |
| | ) | |
| **RAKEEM WALLER** | ) | |

**SENTENCING MEMORANDUM**

The government is filing this memorandum to address what appears to be the pivotal issue in this sentencing: whether the defendant is a career offender.  Although there may be factors (including conversations between defense counsel and the AUSA handling the case at the time of the plea) that warrant a lesser sentence closer to the non-career offender guideline of 77-96 months regardless of how this question is resolved,[1] the government simply wishes to put on the record its position regarding this basic (and very important) guideline determination.

The PSR contains what the government believes to be three career offender predicates: the drug distribution charge at paragraph 38; the resisting arrest charge at paragraph 39; and the assault with a dangerous weapon charge described at paragraph 42.  The latter conviction was not so counted by Probation.  A motion for leave to assert an objection to that failure was filed earlier today because the government believes this conviction is

---

[1] The undersigned will address them at the sentencing hearing.

also a career offender predicate. See U.S.S.G. §4B1.2 Application Note 1 (listing "aggravated assault" as an example of a crime of violence).  See Stearns, "District Court Prosecutors Guide" ("A menacing offer of harm by means of a weapon that is intended to make the victim fearful or apprehensive of impending bodily harm and is reasonably calculated to do so *is an aggravated assault*, whether or not the defendant actually intended to inflict harm") citing Commonwealth v. Musgrave, 38 Mass. App. Ct 519 524-25 (1995) aff'd, 421 Mass. 610 (discussing intent requirements under G.L.c 265 §15B (assault with a dangerous weapon).[2]

While the drug trafficking offense listed in paragraph 38 of the PSR is clearly a career offender predicate and the relevance of the assault with a dangerous weapon conviction is not yet clear, there appears to be a question with respect to the resisting arrest offense described in paragraph 39 of the PSR. That is the issue that the government wishes to address here because this offense will constitute the second predicate required under U.S.S.G. §4B1.1.

It is of course settled that the determination of whether an offense is a "crime of violence" is, at least in the first instance,  a matter of law based on the statute of conviction without regard to the underlying facts. *E.g.,* United States v.

---

[2] See also U.S.S.G. § 2A2.2 app. n.1.  (Aggravated assault is assault that involved "a dangerous weapon with intent to cause bodily injury."

2

DeJesus, 984 F.2d 21, 23 (1st Cir. 1993) ("A formal categorical approach . . . is the method of choice for determining whether a felony constitutes a targeted crime within the meaning of this definition."); see also Taylor v. United States, 495 U.S. 575, 600 (1990) (adopting categorical approach for similar definitional inquiries under the Armed Career Criminal Act ("ACCA")); Shepard v. United States, 544 U.S. 13 (2005) (reaffirming Taylor's categorical approach and severely limiting judicial inquiry into the underlying facts of a conviction for purposes of enhancing a sentence under the ACCA); United States v. Estevez, 419 F.3d 77, 82 (1st Cir. 2005), cert. denied, 126 S.Ct. 7380 (2006)(agreeing that Shepard forecloses reliance on police report to determine whether prior conviction qualifies as career offender predicate).[3]  "This categorical approach requires the court to rely only upon the fact of conviction and the definition of the prior offense."  United States v. Wardrick, 350 F.3d 446, 454 (4th Cir. 2003).

For career offender purposes, a "crime of violence" is defined as:

---

[3] Although both Taylor and Shepard involved predicates for enhancements under the ACCA, the First Circuit has repeatedly stated that because of the similarity between the ACCA's definition of "violent felony" and the career offender provision's definition of "crime of violence," "decisions interpreting the ACCA constitute persuasive authority when a court is called upon to construe the career offender guideline." United States v. Fiore, 983 F.2d 1, 3, n.2 (1st Cir. 1992); see also United States v. Bell, 966 F.2d 703, 705 (1st Cir. 1992); DeJesus, 984 F.2d at 24, n.6.  More specifically, in Fiore, a career offender case, this Court stated: "Although Taylor is an ACCA case, it is the beacon by which we must steer." Fiore, 983 F.2d at 3.

3

> any offense under federal or state law,
> punishable by imprisonment for a term
> exceeding one year, that --
>
>> (1) has an element the use,
>> attempted use, or threatened use of
>> physical force against the person
>> or another, or
>>
>> (2) is burglary of a dwelling,
>> arson, or extortion, involves use
>> of explosives, or otherwise
>> involves conduct that presents a
>> serious potential risk of physical
>> injury to another.

U.S.S.G. §4B1.2(a).

Massachusetts defines the crime of resisting arrest as follows:

> (a) A person commits the crime of resisting
> arrest if he knowingly prevents or attempts
> to prevent a police officer, acting under
> color of his official authority, from
> effecting an arrest of the actor or another,
> by:
>
>> (1) using or threatening to use
>> physical force or violence against
>> the police officer or another; or
>>
>> (2) using any other means which
>> creates a substantial risk of
>> causing bodily injury to such
>> police officer or another.

Mass. Gen. Laws, ch. 268, §34B.

It is almost uncanny the degree to which the guideline definition of crime of violence and the Massachusetts resisting arrest statute match. Both are separated into two provisions. And, although there is a slight difference in wording, each of the two manners in which the crime of resisting arrest can be

established easily falls within one of the two ways in which a prior conviction can qualify as a career offender predicate. Thus, each prong of the resisting arrest statute, even if viewed as a stand-alone crime, would fall within one or the other of the two prongs of the crime of violence definition. There is no way that a person, such as Waller, convicted under the Massachusetts resisting arrest statute could have been convicted for a crime that does not fall within the guidelines definition of a crime of violence.[4]

Although this Court needs to go no further than the face of the Massachusetts resisting arrest statute to conclude that Waller's prior conviction qualifies as a career offender predicate, other courts of appeals, under statutes that less clearly match the guideline definition of crime of violence, have found resisting arrest convictions to be career offender predicates. They thus confirm this result.

In <u>United States v. Hollis</u>, 447 F.3d 1053 (8th Cir. 2006), the court affirmed the ruling below that a Missouri conviction

---

[4] Any argument contention that this Court should look beyond the face of the resisting arrest statute to the actual circumstances of his resisting arrest conviction, as well as the terms of the charging document, the terms of a plea agreement, a transcript of the plea hearing, or some comparable judicial record violates the categorical approach mandated by <u>Taylor</u> and <u>Shepard</u>. It is only "[w]hen the state criminal statute involves different types of offenses, some arguably violent and some not, we look first to the charging document to see which type of offense is involved." <u>Estevez</u>, 419 F.3d at 82. The resisting arrest statute under which Waller was convicted does not included a means by which it can be violated that does not fall within the crime of violence definition of the guidelines.

for resisting arrest was a crime of violence for guideline purposes.  The Missouri statute in question criminalized resisting arrest that consisted of using or threatening the use of violence or physical force, "or by fleeing from such officer." Mo.Rev.Stat. §575.150 (1998) (amended in 2002 and 2005). Apparently assuming that the "flight" prong of the Missouri statute might not include "as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. §4B1.2(a)(1), the Eighth Circuit relied exclusively on the second prong of the guideline crime of violence definition, U.S.S.G. §4B1.2(a)(2), and held: "resisting arrest, as defined by Missouri law, necessarily presents a serious potential risk of physical injury to another."  447 F.3d at 1005.

In the same fashion, the Fourth Circuit in <u>Wardrick</u>, 350 F.3d at 455, found a Maryland resisting arrest conviction to satisfy the second prong of the definition of "violent felony" for purposes of the ACCA.  *See* 18 U.S.C. §924(e)(2)(B); <u>Fiore</u>, 983 F.2d at 1, n.2 (because of the similarity between the ACCA's definition of "violent felony" and the career offender provision's definition of "crime of violence," "decisions interpreting the ACCA constitute persuasive authority when a court is called upon to construe the career offender guideline"). The Maryland resisting arrest statute merely prohibits

"resist[ing] a lawful arrest," with no further elaboration. MD Code, Criminal Law, §9-408. Nevertheless, the Fourth Circuit concluded: "The act of resisting arrest poses a threat of direct confrontation between a police officer and the subject of the arrest, creating the potential for serious physical injury to the officer and others." Id. *Cf.* United States v. Winn, 364 F.3d 7, 12 (1st Cir. 2004) (under categorical approach found prior conviction for escape that involved a failure to return to a halfway house after a break, to present a serious potential risk of physical injury to another and to constitute a crime of violence).[5]

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      UNITED STATES ATTORNEY

Dated: 8/11/08         By:   /s/ John A. Wortmann, Jr.
                                       JOHN A. WORTMANN, JR.
                                       Assistant U.S. Attorney
                                       One Courthouse Way

---

[5] The government also notes its belief that the Supreme Court's recent decision in Begay v. United States, 128 S.Ct. 1581 (2008) does not change this result because the crime of resisting arrest will "typically involve purposeful, violent and aggressive conduct." Id. at 1586. Compare also United States v. Gray, 2008 WL 2853470 (2nd Cir. 2008)(ruling that, under Begay reckless endangerment does not fall within the definition of "crime of violence" because it does not involve purposeful conduct as required by § 4B1.2(a)(2)) with United States v. Westerfield, 2008 WL 2796057 (6th Cir. 2008) (held that crime of abduction involves purposeful and aggressive conduct such that a defendant who has engaged in abduction has exhibited a "degree of callousness toward risk" that shows "an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger.").

Boston, MA
(617) 748-3207